**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE**

<u>Aharon Chesler</u>

     v.                           Case No. 25-cv-20-SM-AJ

<u>Robert T. Chesler</u>

**<u>REPORT AND RECOMMENDATION</u>**

Self-represented plaintiff Aharon Chesler ("Aharon") has sued his father, Robert T. Chesler ("Robert")[1], claiming that Robert violated several of Aharon's Federal Constitutional and state common law rights. Presently before the court for a recommended decision are Aharon's motion to file a second amended complaint ("SAC") (Doc. No. 17) and Robert's motion to dismiss (Doc. No. 14) Aharon's First Amended Complaint ("FAC") (Doc. No. 15). Because the motion to amend could affect the scope of the motion to dismiss, the court addresses that motion first.

<u>I. Motion to Amend</u>

**<u>Legal Standard</u>**

A party may amend its pleading once as a matter of course within twenty-one days after the pleading is served or within twenty-one days after service of a responsive pleading or

---

[1] The court uses the parties' first names only to differentiate them in the text. There is no disrespect intended.

motion. Fed. R. Civ. P. 15(a)(1). Where, as here, that time has passed, a party may amend its pleading only with the consent of the opposing party or with the court's leave. Fed. R. Civ. P. 15(a)(2). Such leave will be freely given when "justice so requires," id., but the Court need not "mindlessly grant every request for leave to amend." Mulder v. Kohl's Dep't Stores, Inc., 865 F.3d 17, 20 (1st Cir. 2017) (quoting Aponte-Torres v. Univ. of P.R., 445 F.3d 50, 58 (1st Cir. 2006)). Instead, the court may deny leave to amend when it concludes, based on the totality of the circumstances, that "the request is characterized by 'undue delay, bad faith, futility, [or] the absence of due diligence on the movant's part.'" Id. (alteration in original) (quoting Nikitine v. Wilmington Tr. Co., 715 F.3d 388, 389 (1st Cir. 2013)).

"Whether a proposed amendment is futile is 'gauged by reference to the liberal criteria of Federal Rule of Civil Procedure 12(b)(6).'" Amyndas Pharms., S.A. v. Zealand Pharma A/S, 48 F.4th 18, 40 (1st Cir. 2022) (quoting Juárez v. Select Portfolio Servicing, Inc., 708 F.3d 269, 276 (1st Cir. 2013)). As such, a motion to amend should be granted "if the amended complaint 'contain[s] sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face.'" Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)); see also Rife v. One W. Bank, F.S.B., 873 F.3d 17, 21

(1st Cir. 2017) ("'Futility' means that the complaint, as amended, would fail to state a claim upon which relief could be granted.") (quoting Glassman v. Computervision Corp., 90 F.3d 617, 623 (1st Cir. 1996)).

### Factual Background

The following facts are drawn from Aharon's proposed SAC (Doc. No. 17-1). Robert homeschooled Aharon until 2017 in conformance with Robert's Orthodox Jewish religious beliefs. Aharon turned eighteen in March 2017. During Aharon's adolescence, he had minimal interaction with the community outside of Robert's home, except for medical appointments. Robert required Aharon to comply with Robert's religious beliefs, and threatened him with personal injury for failure to do so.  Robert did not require such compliance from Aharon's sisters. Though Robert took control of certain Social Security benefits due to Aharon and an account established for Aharon under the Uniform Gift to Minors Act ("UGMA"), he refused to spend any money on Aharon's behalf, though he spent money on Aharon's sisters who, Aharon alleges, are "whiter" than he is.

The refusal to spend money on Aharon's behalf included not paying for his orthodontic care or college.  When Aharon turned 18 in March 2017, Robert forced Aharon to sign a contract establishing Robert as Aharon's "general durable power of attorney" and revoking any right to any money in any bank

account titled with the two of them.  In May 2023 Robert began treating Aharon worse than his sister Chana, by paying for her college education while denying Aharon any financial assistance. Aharon was then diagnosed as suffering from Major Depressive Disorder. In September 2023 Aharon discovered the UGMA account and confronted Robert about it. Robert refused to acknowledge the account and ordered Aharon not to discuss it under threat of personal injury.

During 2024, Aharon and Robert sought to negotiate a settlement over the account, using Robert's brother and a family friend to mediate. Robert was very abusive in these negot1at1ons. In August 2024, Robert and Aharon reached an agreement to exchange money and cease threats of personal injury, while preserving the right to take civil action if a disagreement were to arise. In November 2024, Robert terminated the contract by denying Aharon every right in the August agreement and by threatening personal injury. Aharon eventually sued Robert in state court regarding the above finances and Aharon's sister Shoshana then sued Aharon, alleging that Aharon was verbally abusive and made threats with firearms. The Malden, Massachusetts police eventually charged Aharon criminally.

Aharon filed the instant suit against several defendants in January 2025. Soon after, he dismissed all defendants except

4

Robert, and later amended his complaint. In his proposed SAC, Aharon alleges that Robert violated: 1) his rights under the First and Thirteenth Amendments to the Federal Constitution; 2) 42 U.S.C §§ 1983 and 1985(2); 3) two criminal statutes – 18 U.S.C. Ch. 77 and a specific section of that chapter, 18 U.S.C. § 1589; and 4) several provisions of state common law.

## Discussion

A. 42 U.S.C. § 1983

42 U.S.C. 1983 is not a separate cause of action, but is instead a statutory vehicle through which a plaintiff can assert a violation of a federal right. See Albright v. Oliver, 510 U.S. 266, 271 (1994) ("Section 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" (quoting Baker v. McCollan, 443 U.S. 137, 144, n. 3 (1979)); see also, Goldblatt v. Geiger, 867 F. Supp. 2d 201, 203 (D.N.H. 2012) (citing Cruz-Erazo v. Rivera-Montanez, 212 F.3d 617, 620 (1st Cir. 2000)). Accordingly, the court will address Aharon's proposed First and Thirteenth Amendment claims as though they are brought under 42 U.S.C. § 1983.

The court first notes a fundamental problem with the legal sufficiency of Aharon's Constitutional claims – lack of state action. Section 1983 "affords a private right of action in favor of persons whose federally assured rights are abridged by state

actors." Kando v. R.I. State Bd. of Elections, 880 F.3d 53, 58
(1st Cir. 2018). Section 1983 "does not apply to 'merely private
conduct, no matter how discriminatory or wrongful.'" Grapentine
v. Pawtucket Credit Union, 755 F.3d 29, 31 (1st Cir. 2014)
(quoting Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 50
(1999)).

The First Circuit Court of Appeals has enumerated "three
general ways in which a private party may become a state actor
within the purview of section 1983." Cruz-Arce v. Mgmt. Admin.
Servs. Corp., 19 F.4th 538, 544 (1st Cir. 2021).

> First, a private party may be considered a state actor
> if it assumes a public function which, by tradition,
> is exclusively reserved to the state (the public
> function test). Second, a private party may be
> considered a state actor if its conduct is coerced or
> significantly encouraged by the state (the state
> compulsion test). Third, a private party may be
> considered a state actor if it and the state have
> entered into so symbiotic a relationship that they
> have become joint participants in the challenged
> conduct (the nexus/joint action test).

Id. (internal citations omitted). While a plaintiff is not
required to specify which test applies, the allegations in the
complaint "must comprise a factual predicate sufficient to
render it plausible that one of these tests can be satisfied."
Id. "If the challenged conduct cannot be classified as state
action, a section 1983 claim necessarily fails." Id. at 543.

Aharon asserts that Robert's role as a homeschool teacher
transforms him into state actor, because education is

traditionally a public function. See proposed SAC (Doc. No. 17-1) at 2. The court, therefore, focuses only on the public function test outlined above.  As explained below, Robert's role as Aharon's homeschool teacher does not make him a "state actor," for purposes of 42 U.S.C. § 1983.

Under the public function test, "[a] private party may become a state actor if he assumes a traditional public function when performing the challenged conduct." Santiago v. Puerto Rico, 655 F.3d 61, 68 (1st Cir. 2011). This test "is related to situations where a state tries to escape its responsibilities by delegating them to private parties." Rockwell v. Cape Cod Hosp., 26 F.3d 254, 258 (1st Cir. 1994). Through this delegation, the actions of the private entity can be "fairly attributed to the state." See Lugar v. Edmonson Oil Co., Inc., 457 U.S. 922, 937 (1982).

Under the traditional public function test, however, it is not enough to show that a private entity is performing an important state function. Rather, "[t]he plaintiff must show that the private entity assumed powers traditionally exclusively reserved to the State." Rockwell, 26 F.3d at 258 (internal quotation marks omitted). "Exclusivity is an important qualifier, and its presence severely limits the range of eligible activities." Santiago, 655 F.3d at 69. "While many functions have been traditionally performed by governments, very

few have been 'exclusively reserved to the State.'" Flagg Bros.
v. Brooks, 436 U.S. 149, 158 (1978)). As relevant here, the
First Circuit Court of Appeals has observed that "education is
not and never has been a function reserved to the state."
Logiodice v. Trs. of Maine Cent. Inst., 296 F.3d 22, 26-27 (1st
Cir. 2002) (citing Pierce v. Soc'y of Sisters, 268 U.S. 510
(1925)). More pointedly, given that the parties are both New
Hampshire residents, the First Circuit has noted that "New
Hampshire history shows that educating children of high school
age was not traditionally an exclusive public function." Johnson
v. Pinkerton Acad., 861 F.2d 335, 338 (1st Cir. 1988); see also
Hamlin ex rel. Hamlin v. City of Peekskill Bd. of Educ., 377 F.
Supp. 2d 379, 386 (S.D.N.Y. 2005) ("Despite the importance of
public education in American society, education is not
considered to be exclusively the prerogative of the State.")
(citing cases).

Aharon has provided no authority, nor can the court locate
any, supporting his assertion that homeschool teachers are state
actors. He cites to Marsh v. State of Alabama, 326 U.S. 501
(1946), for the proposition that "public education is
traditionally performed by the State . . . ." Proposed SAC (Doc.
No. 17-1 at 2. But Marsh is unpersuasive for two reasons. First,
though Marsh involves an analysis of First Amendment religious
freedom, it does not implicate the "public function test" in any

discernable way. But even if it did, the test, as described above, requires "exclusivity," rather than "tradition."

Based on the foregoing, the court finds that Robert is not a "state actor," for purposes of section 1983. Accordingly, Aahron's proposed Constitutional claims would be futile and cannot proceed.

B. 42 U.S.C. § 1985

"Section 1985 provides a remedy for acts of civil conspiracy in which two or more individuals conspire for the purpose of depriving another of rights or privileges accorded to them by law." Alston v. Spiegel, 988 F.3d 564, 577 (1st Cir. 2021) (citing) 42 U.S.C. § 1985(3). To plead an actionable claim, "a plaintiff must allege the existence of a conspiracy, allege that the purpose of the conspiracy is 'to deprive the plaintiff of the equal protection of the laws,' describe at least one overt act in furtherance of the conspiracy, and 'show either injury to person or property, or a deprivation of a constitutionally protected right.'" Id. (quoting Pérez-Sánchez v. Pub. Bldg. Auth., 531 F.3d 104, 107 (1st Cir. 2008)). Generally speaking, "a conspiracy is a 'combination of two or more persons acting in concert to commit an unlawful act.'" Id. (quoting Earle v. Benoit, 850 F.2d 836, 844 (1st Cir. 1988)). But to plead a civil rights conspiracy, "a plaintiff 'must plausibly allege facts indicating an agreement among the

conspirators to deprive the plaintiff of h[is] civil rights.'" Id. (quoting Parker v. Landry, 935 F.3d 9, 18 (1st Cir. 2019)). The proposed SAC fails to plausibly allege such facts.

Aharon's conspiracy claims against Robert allege that he conspired with an attorney to libel Aharon in a New Hampshire state court case, and conspired with Aharon's sister to slander him in a Massachusetts state court case. As there are no allegations pertaining to Aharon's civil rights, his claims against Robert under section 1985 would be futile.[2]

## C. 18 U.S.C. Ch. 77; 18 U.S.C. § 1589

The Trafficking Victims Protection Act ("TVPA") created several federal criminal offenses related to human trafficking. Among other provisions, the TVPA criminalized: "forced labor," "[t]rafficking with respect to peonage, slavery, involuntary servitude, or forced labor," and "[s]ex trafficking of children or by force, fraud or coercion." See 18 U.S.C. §§ 1589, 1590, and 1591. Roe v. Howard, 917 F.3d 229, 236 (4th Cir. 2019). The civil remedy provision of the TVPA provides:

---

[2] Aahron also suggests that Robert calling the police to report certain of Aharon's conduct met the requirements of state action under 42 U.S.C. § 1983. Proposed SAC (Doc. No. 17-1) ¶ 64. But "cases hold uniformly that a private individual's calling the police and giving them information – even if the information is later shown to be incorrect – does not establish joint action between the police and the private caller for the purpose of § 1983 liability." Ortolaza ex rel. E. v. Capitol Region Educ. Council, 388 F. Supp. 3d 109, 124 (D. Conn. 2019).

An individual who is a victim of a violation of this
chapter may bring a civil action against the
perpetrator (or whoever knowingly benefits,
financially or by receiving anything of value from
participation in a venture which that person knew or
should have known has engaged in a violation of this
chapter) in an appropriate district court of the
United States and may recover damages and reasonable
attorneys fees.

18 U.S.C. § 1595(a).

Aahron alleges that Robert violated 18 U.S.C. § 1589, which

prohibits forced labor.[3] 18 U.S.C. § 1589 imposes individual

liability as follows:

(a) Whoever knowingly provides or obtains the labor or
services of a person by any one of, or by any
combination of, the following means —

(1) by means of force, threats of force, physical
restraint, or threats of physical restraint to
that person or another person;

(2) by means of serious harm or threats of
serious harm to that person or another person;

(3) by means of the abuse or threatened abuse of
law or legal process; or

(4) by means of any scheme, plan, or pattern
intended to cause the person to believe that, if
that person did not perform such labor or
services, that person or another person would
suffer serious harm or physical restraint . . .

---

[3] Although his proposed SAC asserts claims under "18 U.S.
Code Chapter 77, not limited to § 1589 – Forced Labor," there
are no allegations in the complaint that can be construed to
asserts claims under provisions proscribing sex trafficking,
document procurement, or peonage, slavery and trafficking. See
Proposed SAC (Doc. No. 17-1) ¶ 63; 18 U.S.C. §§ 1590–1592.

"Section 1589 was 'passed to implement the Thirteenth Amendment against slavery or involuntary servitude.'" Muchira v. Al-Rawaf, 850 F.3d 605, 617 (4th Cir. 2017), as amended (Mar. 3, 2017) (quoting United States v. Toviave, 761 F.3d 623, 629 (6th Cir. 2014)). "Congress intended to reach cases in which persons are held in a condition of servitude through nonviolent coercion," as well as through "physical or legal coercion." Id. (quoting United States v. Dann, 652 F.3d 1160, 1169 (9th Cir. 2011) (internal quotation marks omitted)).

Aharon asserts two categories of Robert's conduct towards him, which, he claims, fall within the statute. First, Aharon cites Robert's "impos[ing] on Aharon Robert's Orthodox Jewish religious beliefs, under threat of personal injury by violence and trespass to chattels." Proposed SAC (Doc. No. 17-1) ¶¶ 6-14. The other category of claims is financial in nature. Aharon alleges that Robert took control over of the funds in the UGMA account as well as Social Security Disability payments that were provided on Aharon's behalf. Id. ¶¶ 15-20.

Even if the conditions Aharon describes constitute "coercion," the proposed SAC falls short of stating a claim under section 1589 because it lacks allegations that Robert was obtaining Aharon's "labor or services." While the terms "labor" and "services" are undefined in the statute, the Second Circuit has defined "labor" as "the 'expenditure of physical or mental

effort especially when fatiguing, difficult, or compulsory,'"
and "service" as "the performance of work commanded or paid for
by another.'" United States v. Marcus, 628 F.3d 36, 44 n.10 (2d
Cir. 2010. There are no allegations that would satisfy the
latter term, service. Nor is there any authority for the
proposition that either Robert's religious observance
requirement, nor his alleged confiscation of Aharon's funds fit
within the definition of "labor"  Indeed, the allegations in
this case more closely resemble those in Toviave, in which the
Sixth Circuit reversed the defendant's conviction for forced
labor. 761 F.3d at 630.

In Toviave, the defendant brought four young relatives from
Togo to live with him in the United States. He made the children
complete household chores, like cooking, cleaning, and doing the
laundry. He also abused the children, hitting them as punishment
for "minor oversights or violations of seemingly arbitrary
rules." Id. at 624. "Although [the defendant's] treatment of the
children was reprehensible," the Sixth Circuit found it did not
amount to "forced labor" in violation of the forced labor
statute. Id. "[T]he extremity of force also is not a determinant
of forced labor, one way or the other. A parent who brutally
beats a child to get the child to sit up straight or stop
crying, or to punish a child for some slight misdeed is not

13

guilty of forced labor. In that hypothetical, there may have been force, but there is no labor." Id. at 626-27.

To be sure, a successful TVPA claim does not require that plaintiffs be kept under "literal lock and key." Paguirigan v. Prompt Nursing Emp. Agency LLC, 286 F. Supp. 3d 430, 439 (E.D.N.Y. 2017) (citing Franco v. Diaz, 51 F. Supp. 3d 235, 247 (E.D.N.Y. 2014); Guobadia v. Irowa, 103 F. Supp. 3d 325, 335 (E.D.N.Y. 2015) ("that the Plaintiff may have been able to come and go as she pleased from the home does not mean the Defendants' [sic] were not engaging her in unlawful forced labor . . . ."). But taken in context, Aharon's allegations are of neither the type nor degree that courts have found to satisfy the TVPA. See, e.g., United States v. Rivera, 799 F.3d 180, 183 (2d Cir. 2020) (affirming conviction where defendants "threatened the victims with violence and deportation if they spoke to the authorities or quit, forced them to drink alcohol until they were intoxicated, required them to strip, and compelled them to be fondled [and] groped by customers, and to have sex with customers"); United States v. Kalu, 791 F.3d 1194, 1197-99 (10th Cir. 2015) (affirming conviction where defendant tricked foreign nationals into coming to the United States to work as specialized nurse instructors and supervisors at a university, charged them a fee for this service, but later "required them to work as non-specialized laborers in nursing

14

homes, retained a portion of their wages for personal profit, and threatened them with deportation and financial ruin if they did not comply with his demands"); United States v. Campbell, 770 F.3d 556, 559 (7th Cir. 2014) (defendant convicted of forced labor where he enticed young women to work for him as masseuses, with no requirement that they perform sexual services, by gaining their trust and offering them comfortable places to live, and subsequently required them to break all ties with their families and friends, "confiscated their identification [and] immigration documents," "renamed them, branded them with tattoos, abused them, and forced them to engage in prostitution"); Dann, 652 F.3d 1160, 1163-69 (9th Cir. 2011) (affirming conviction where employer brought non-English-speaking employee to the United States under a fraudulently obtained visa, confiscated her passport, forbade her from leaving the house or speaking to anyone outside the home, never paid her despite promise to do so prior to bringing her to the United States, forced her to sleep on the floor in a corner of the living room, rationed her food, falsely accused her of stealing, claimed that she was in substantial debt to the employer, threatened her with her illegal status, threatened to report her to authorities, and told her she had no rights in the United States); United States v. Sabhnani, 599 F.3d 215, 224-32 (2d Cir. 2010) (affirming forced labor convictions where

victims, who did not speak English and did not know how to drive or use a telephone, were, among other things, brought into the United States illegally, forced to sleep on the floor, dressed in rags, provided inadequate food, and threatened with arrest).[4]

Against this factual and legal backdrop, the court finds that Aharon's proposed federal claims fail to state a valid claim for relief, and are therefore futile. See Rife, 873 F.3d at 21.

D. State Law Claims

The remaining claims in the proposed SAC – slander, assault, neglect, conversion and trespass to chattel -- are brought under state law. For the reasons that follow, these claims cannot proceed in this court.

"Federal courts have [original] jurisdiction over two general types of cases: cases that aris[e] under federal law and cases in which the amount in controversy exceeds $75,000 and there is diversity of citizenship among the parties." Industria Lechera de P.R., Inc. v. Beiró, 989 F.3d 116, 120 (1st Cir.

_____

[4] The court in Toviave also noted that most cases where courts found that forced labor took place in the household context involved defendants who failed to provide their victims with an education. Aharon's proposed SAC contains no allegations regarding secondary schooling, noting only that he had to pay for college himself. There is no authority for the proposition that a parent refusing to pay for one child's post-secondary education can support a claim under the TVPA, even though the parent pays the costs for other children. 761 F.3d at 629.

2021) (second alteration in original) (quotations and citations omitted). Both Aharon and Robert are citizens of New Hampshire. Accordingly, because the claims in the proposed SAC can only be based only on federal question jurisdiction, Aharon's state law claims can be brough in this court "solely as a result of the district court's exercise of supplemental jurisdiction." Zell v. Ricci, 957 F.3d 1, 15 (1st Cir. 2020). The First Circuit has held, however, that "when all federal claims have been dismissed, it is an abuse of discretion for a district court to retain jurisdiction over the remaining pendent state law claims unless doing so would serve the interests of fairness, judicial economy, convenience, and comity." Id. (internal quotation marks omitted) (quoting Wilber v. Curtis, 872 F.3d 15, 23 (1st Cir. 2017)). "[W]hen the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice." Borrás Borrero v. Corporación del Fondo del Seguro del Estado, 958 F.3d 26, 37 (1st Cir. 2020) (alteration in original) (quoting Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988)).

This case is still in its early stages. The pleadings have not yet closed and no discovery plan is in place. The proper course under these circumstances is for the court to decline to exercise supplemental jurisdiction over Aharon's state law

claims. Therefore, this court recommends that Aharon's Motion to Amend should be denied as to his state law claims as well.

If this recommendation is adopted, the Amended Complaint will remain the operative document in this case. The court, therefore, turns next to Robert's motion to dismiss that complaint.

II. Motion to Dismiss

**Standard of Review**

When considering a motion to dismiss, the court accepts all well-pleaded facts alleged in the complaint as true, disregards legal labels and conclusions, and resolves reasonable inferences in the plaintiff's favor. See Galvin v. U.S. Bank, N.A., 852 F.3d 146, 155 (1st Cir. 2017). The court may also consider documents referenced by or incorporated into the complaint. See Kando v. Rhode Island State Bd. of Elections, 880 F.3d 53, 56 (1st Cir. 2018).

To avoid dismissal, the complaint must allege sufficient facts to support a "plausible" claim for relief. See Iqbal, 556 U.S. at 678. To satisfy that plausibility standard, the factual allegations in the complaint, along with reasonable inferences, must show more than a mere possibility of liability – that is, "a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). See also Lyman v. Baker, 954 F.3d 351, 359-60 (1st Cir.

2020) ("For the purposes of our [12(b)(6)] review, we isolate and ignore statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements.") (citation and internal punctuation omitted).

In other words, the complaint must include well-pled (i.e., non-conclusory, non-speculative) factual allegations as to each of the essential elements of a viable claim that, if assumed to be true, allow the court to draw the reasonable and plausible inference that the plaintiff is entitled to the relief sought. See Tasker v. DHL Retirement Savings Plan, 621 F.3d 34, 38-39 (1st Cir. 2010).

In his FAC, Aharon asserts claims against Robert under the First and Thirteenth Amendments, 42 U.S.C. §§ 1981(a), 1981(c), 1983, and 1985(2). He also asserts state law claims of slander assault, neglect, conversion and trespass to chattels. For the same reasons given in the court's recommended denial of Aharon's motion to amend, the claims under the First and Thirteenth Amendments, and 42 U.S.C. §§ 1983 and 1985(2) should be dismissed for failure to state a claim for relief. As explained below, the remainder of Aharon's claims should also be dismissed.

A.  Claims under 42 U.S.C. § 1981(a) and (c)

Pursuant to 42 U.S.C. § 1981:

(a) All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

. . .

(c) The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law.

A plaintiff must establish three elements to state a prima facie claim under 42 U.S.C. § 1981: "(1) that he is a member of a racial minority, (2) that the defendant discriminated against him on the basis of race, and (3) that the discrimination implicated one or more of the activities enumerated in the statute." Brooks v. Martha's Vineyard Transit Auth., 433 F. Supp. 3d 65, 75 (D. Mass. 2020) (quoting Garrett v. Tandy Corp., 295 F.3d 94, 98 (1st Cir. 2002)).

Aharon's claims fail at the first step, as he does not allege that he is a member of a racial minority. The closest he comes to making such an allegation is asserting that Robert treated him "worse than his sisters [because] they are whiter than" he is. FAC (Doc. No. 15) ¶ 63a. But he does not claim that he is a member of a racial minority or that he suffered discrimination "consequent to his race." Jacobs v. Soars, No. CIV.A. 14-12536-LTS, 2014 WL 7330762, at *3 (D. Mass. Dec. 19,

2014) (rejecting claim under section 1981 where plaintiff alleged discrimination on the basis of her religion, handicap, sex, perception of mental illness and on the basis of her affiliation with a disabled person.)  Accordingly, Aharon's claim under 42 U.S.C. §§ 1985(a) and (c) should be dismissed.

B.  State Law Claims

For the same reasons set forth in the court's recommended denial of Aharon's motion to amend, the court should decline supplemental jurisdiction over Aharon's state law claims. These claims should be dismissed without prejudice to being refiled in a court of competent jurisdiction.

## Conclusion

Based on the foregoing, plaintiff's motion to amend (Doc. No. 17) should be denied on the basis of futility and lack of subject matter jurisdiction.  In addition, the defendant's motion to dismiss the FAC (Doc. No. 14) should be granted for failure to state a claim for relief. The dismissal of plaintiff's state law claims should be without prejudice to refiling in a court of competent jurisdiction. If the district judge adopts these recommendations, the case should be closed and judgment entered in the defendant's favor. All remaining motions should be terminated as moot.

Any objections to this Report and Recommendation must be filed within fourteen days of receipt of this notice. See Fed.

R. Civ. P. 72(b)(2). The fourteen-day period may be extended upon motion. Only those issues raised in the objection(s) to this Report and Recommendation are subject to review in the district court. See Sch. Union No. 37 v. United Nat'l Ins. Co., 617 F.3d 554, 564 (1st Cir. 2010). Any issues not preserved by such objection(s) are precluded on appeal. See id. Failure to file any objections within the specified time waives the right to appeal the district court's Order. See Santos-Santos v. Torres-Centeno, 842 F.3d 163, 168 (1st Cir. 2016).

_____
Andrea K. Johnstone
United States District Judge

May 5, 2025

cc:  Aharon Chesler, pro se
     Counsel of Record